ST. OLOFF, The (WEIBERG v.). See Case No. 17,357.

## Case No. 12,243.

### The ST. PAUL.

[10 Chi. Leg. News, 252; 3 Cin. Law Bul. 321.] [1]

District Court, E. D. Michigan. 1878.

COLLISION—VESSELS FOLLOWING—RIGHT OF WAY—ATTEMPT TO EMBARRASS PASSING VESSEL.

While the forward one of two vessels, pursuing the same course, has the right of way, she ought not to thwart or embarrass the other in passing her; and if she is willfully thrown across the path of the overtaking vessel, and a collision ensues, she cannot recover, though the rear vessel be not without fault.

The collision [between the propellors Wenona and St. Paul] took place at 6 o'clock on the morning of the 26th of August, 1876, about a quarter of a mile below Grassy Island light, in the Detroit river. Both vessels were bound up, the Wenona somewhat ahead, and proceeding at their usual rate of speed; the Wenona at eight and a half, and the St. Paul at ten miles an hour. The collision occurred in an attempt of the St. Paul to pass the Wenona. The theory of the libellant was that the Wenona was coming up on the usual course of vessels at that point, and about the middle of the channel; that the St. Paul came up astern of her, and, though the Wenona kept steadily on her course, continued, without slackening her speed, to crowd her stern out into the stream, and her bow toward Grassy Island, until she struck her with the bluff of her bow upon her port quarter; that the St. Paul still followed and crowded the Wenona, and before she could stop, caused her to ground on Grassy Island; and when she was hard aground, the St. Paul backed up and went on her course, disregarding the calls of the master for assistance. The libel also charged the St. Paul with the following specified faults: (1) In neglecting to keep out of the way of the Wenona. (2) In not

[1] [3 Cin. Law Bul. 321, contains only a partial report.]

indicating, by signal, that she was about to attempt to pass her. (3) In not slackening her speed.

The answer claimed that the St. Paul, being the faster vessel, approached the Wenona in the vicinity of Mammy Judy light, about two miles below the place of collision, with the intention of passing her on her starboard side, she being then about mid channel; that, as she began to gain upon the Wenona, the latter commenced to swing to starboard as if under a port wheel, and as if to cross the bows of the St. Paul, on seeing which the St. Paul put her wheel to starboard, thinking to pass on the port side of the Wenona, as there was abundant room to do; that, as the St. Paul came up again to the stern of the Wenona, the latter swung to port and headed across the bows of the St. Paul; that she continued to head across her bows, and finally ran on to Grassy Island, on the port side of the channel; that at this time the St. Paul was close on to the port hand bank; that before the Wenona struck, the officers of the St. Paul hailed her to keep off, but she failed to do so, and ran aground across the bows of the St. Paul. The answer also charges the following faults upon the part of the Wenona: (1) In running across the bows of the St. Paul, and in changing her course for the purpose of preventing the St. Paul, which was the faster vessel, from passing her at her usual speed. (2) That, had the Wenona kept her course, the St. Paul would have passed without touching her, or interfering with her navigation; and that the grounding arose from the willful and deliberate action of the officers of the Wenona. The answer admitted barely touching the Wenona, and denied that any damage was done thereby.

H. H. Swan and Alfred Russell, for libellant.

Moore & Canfield, for claimant.

BROWN, District Judge. This collision took place in clear weather, and in broad daylight, and was wholly inexcusable. Upon a careful perusal of the testimony, I am satisfied the Wenona was endeavoring to embarrass and thwart the St. Paul in her attempt to pass her. It is clearly proven that when the St. Paul overhauled her, opposite Mammy Judy light, the Wenona was near the center of the channel; that, as the St. Paul ported and attempted to pass her, she also ported and crossed over as near to Fighting Island on the Canada shore as was safe under the circumstances; that the St. Paul, seeing that an attempt to pass upon the starboard side was useless, starboarded her wheel with the intention of passing upon the port side; that the Wenona, seeing this maneuver, also starboarded and passed over towards Grassy Island, near which the collision occurred. The excuse given by the Wenona was that she was pursuing the usual course of vessels bound up. This is wholly disproved, however, by the officers of the St. Paul and by those of the Northwest, a steamer plying daily between Detroit and Cleveland. The chart, too, exhibits a channel of nearly uniform depth across the river, which at that point is about three-eighths of a mile wide, and very nearly straight from Mammy Judy to Grassy Island light. Upon no other theory than that of a wish to baffle the St. Paul, in her efforts to pass her, can the maneuver of the Wenona be accounted for. All the men upon the deck of the St. Paul swear that this was her evident purpose. It is admitted by the wheelsman of the Wenona herself, (whose testimony, however, it is but fair to say, is open to some suspicion,) and but feebly denied by the officer in charge. The watch upon the deck of the Northwest, which was passing up at the time, also noticed and remarked upon the evident attempts of the Wenona to prevent the St. Paul from passing. Indeed, the evidence tends to show that the maneuver of the Wenona in crossing to Fighting Island, and thence to Grassy Island, which is charged in the libel to have been attempted but once, was, in fact, repeated. But whether this be so or not, the purpose of the Wenona in preventing the St. Paul passing her is too clearly proven to admit of doubt.

Under article 17, it is unquestionably the duty of every vessel overtaking another vessel to keep out of her way; but under article 18, there is a corresponding duty on the part of the forward vessel to keep her course. She is not bound to give way or to yield her position in the channel, but she must not embarrass or thwart the faster vessel in passing her. If such efforts are made and a collision ensues, such collision upon her part is willful and reckless. The Rhode Island [Cases Nos. 11,745 and 11,743]; The Columbia, 10 Wall. [77 U. S.] 246; The Great Republic, 23 Wall. [90 U. S.] 20; The Newport [Case No. 10,185]; McNally v. Meyer [Id. 8,909]; The Narragansett [Id. 10,018]; The W. H. Clark [Id. 17,482]; The A. G. Brooks [Id. 98]; The Governor [Id. 5,645]. Had the Wenona been proceeding up the river upon her usual course and the St. Paul had followed her, as she did, hanging for some considerable distance within 50 feet of her stern, and finally run into her quarter, I should have had no hesitation in condemning the St. Paul for the collision; but the facts show very clearly that the collision was caused by an effort of the Wenona to prevent the St. Paul from passing her; that while the latter was endeavoring to take advantage of her greater speed, she hit the Wenona with the bluff of her starboard bow upon the port quarter of the Wenona, and thereby turned her stern to starboard and her bow to port, and probably caused her to run aground. It appears, however, that as soon as the officers of the St. Paul saw the Wenona was becoming unmanageable and was likely to ground, they at once stopped and backed away from her before

the bow of the St. Paul passed the stern of the Wenona.

While I think the St. Paul was guilty of negligence in pressing the Wenona so close, there is no evidence that the collision on her part was willful or reckless, and the case turns upon the question whether a vessel which has brought about a collision by her willful misconduct can claim contribution of another which has been guilty of simple negligence. I find no case directly in point. In The R. L. Maybey [Case No. 11,870], the district court found that the collision occurred by the willful fault or intentional wrong of both parties, and consequently that the vessel complaining, having voluntarily taken her chances in the collision, must abide the loss. The circuit court sustained this view [Id. 11,871], the learned justice observing: "I have found no case where an apportionment has been made in a case like the present, viz., where the collision occurred by the willful and intentional act of both parties, and I shall not be the first to make the precedent. If two vessels choose voluntarily to take the chance of knocking off each other's heads, I shall lay down no rule that will invite the unfortunate one into a court of admiralty for redress. The remedy for the owner is to discharge his master and crew and man his vessel with competent and prudent hands." The case was reversed in the supreme court (Sturgis v. Clough, 21 How. [62 U. S.] 451), the court holding one of the tugs in fault, but in delivering the opinion Mr. Justice Grier apparently conceded the general principle acted upon in the court below. "Cases may occur in which two steamboats engaged in unlawful racing may recklessly or willfully dash against each other, and the court treating them both as criminals, may refuse to sustain an action or decide which was most to blame, leaving each to suffer the consequences of his own folly and recklessness."

It is true, this case is not directly in point. There was no intention on the part of either vessel here to bring about a collision. The Wenona, however, committed a willful violation of the rules of navigation, and deliberately thrust herself into a position where a collision was natural and probable. While this, of course, would not authorize a reckless attempt on the part of the St. Paul to run her down, it is scarcely to be expected that her officers would exercise the same care and caution in passing her, which would have been required under the circumstances. Having executed a maneuver which invited disaster, libellant ought not to complain that the invitation was accepted. Even if this case be considered one of mutual fault, it seems to me the faults are so egregiously unequal as to require the court to refuse an apportionment. The Great Republic 23 Wall. [90 U. S.] 20; Ralston v. The State Rights [Case No. 11,540]. The libel will be dismissed.

ST. PAUL (NORTHWESTERN UNION PACKET CO. v.). See Case No. 10,346.

ST. PAUL (WARREN v.). See Case No. 17,199.

ST. PAUL & C. RY. CO. (McLEAN v.). See Cases Nos. 8,892 and 8,893.

ST. PAUL & P. R. CO. (HOPKINS v.). See Case No. 6,690.

ST. PAUL & P. R. CO. (KENNEDY v.). See Cases Nos. 7,706 and 7,707.

ST. PAUL & P. R. CO. (WETMORE v.). See 3 Fed. 177.